AO 472 (Rev. 11/16) Order of Detention Pending Trial

United States District Court
Southern District of Texas

**ENTERED**
November 15, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
for the

Southern District of Texas

United States of America )
v. )
) Case No. 4:19-cr-755
James Myers aka Jason James Myers )
*Defendant* )

# ORDER OF DETENTION PENDING TRIAL

## Part I - Eligibility for Detention

Upon the

☐ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or

☐ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

## Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

☐ **(e)** any felony that is not otherwise a crime of violence but involves:
**(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**

☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**

☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**

☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the

defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

☐ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☐ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☐ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

☐ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis. *(Part III need not be completed.)*

**OR**

☐ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

### Part III - Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☒ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☐ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

☒ Weight of evidence against the defendant is strong
☒ Subject to lengthy period of incarceration if convicted
☒ Prior criminal history
☐ Participation in criminal activity while on probation, parole, or supervision
☐ History of violence or use of weapons
☐ History of alcohol or substance abuse
☒ Lack of stable employment
☐ Lack of stable residence
☒ Lack of financially responsible sureties

☒ Lack of significant community or family ties to this district
☐ Significant family or other ties outside the United States
☐ Lack of legal status in the United States
☐ Subject to removal or deportation after serving any period of incarceration
☐ Prior failure to appear in court as ordered
☐ Prior attempt(s) to evade law enforcement
☐ Use of alias(es) or false documents
☐ Background information unknown or unverified
☐ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:

On November 15, 2019, the Court held a hearing to determine whether Defendant should be held in custody pending trial in accordance with the Bail Reform Act of 1984, 18 U.S.C. § 3142(f).  Assistant United States Attorney Heather Winter appeared on behalf of the United States (the "Government"); CJA J. Gordon Dees appeared on behalf of Defendant James Myers a/k/a Jason James Myers ("Myers").

EVIDENCE PRESENTED

The Government's Evidence Shows Defendant Is A Danger To The Community

The Grand Jury in the Southern District of Texas, Houston Division, indicted the Defendant for felon in possession of a firearm. The Government offered testimony from an Officer with the Houston Police Department ("HPD"). The Court found his testimony to be credible. Officer testified to the following:

On November 6, 2018, the Houston Police Department ("HPD") received information that Defendant was in the back cooler of a gas station on Greens Road, engaging in multiple hand to hand drug transactions, where he transferred drugs in exchange for cash from multiple individuals. The HPD officers arrived at the gas station. The clerk gave them permission to go into the back cooler. Defendant was in the cooler, hiding in a dark spot. Defendant told HPD that he had permission to be in the cooler, but the clerk said that he had no such permission and he did not work for the gas station.

HPD found a lunch box near Defendant in the cooler on top of a stack of drinks. Inside the lunch box was a stolen Colt 45 pistol (which was loaded), Ecstasy, marijuana, and other paraphernalia including a scale and scoop. Within inches of the lunch box was a cell phone. Defendant denied the lunchbox was his.

HPD obtained surveillance video from the gas station. The video showed Defendant enter the gas station with the lunch box in his hand. He is seen walking to the back cooler. He then shows off what he has in his lunch box. Defendant enters the cooler and engages in hand to hand drug transactions. Defendant is the only one on the video seen in possession of the lunch box.

HPD obtained a search warrant for the cell phone. The search revealed texts with potential customers for Defendant's drugs. There was a picture of him in the cooler holding the gun. His text messages reflected drug transactions.

Officer was involved in Defendant's arrest on November 14, 2019. HPD arrived at Defendant's residence. He resides at this apartment with his girlfriend, Miranda Williams, and their 1 year old baby, and her two children. They saw his girlfriend outside the apartment. They asked her if Defendant was home alone. She confirmed that he was there but asleep with her baby in the bed with him. She said there were no guns in the apartment. HPD allowed his girlfriend to enter the apartment and retrieve the child. HPD then went in to arrest Defendant. He told HPD that there was a gun under the mattress. HPD retrieved a 9 mm glock that turned out to be stolen. At the time of his arrest, Defendant was out on bond for the three state charges related to the above referenced actions: possession of a firearm by a felon, possession with intent to deliver, and manufacturing and delivering controlled substances.

Pretrial Services prepared a report after an interview with Defendant.

Defendant is 26 years old and a life long resident of Houston, Texas. He lives with his girlfriend, Miranda Williams, and their child and her two children from a prior relationship. Defendant reported that he was unemployed. He said that he had some "side jobs" for various construction companies when they had need for workers. He stopped working when it got too cold outside to work. He reported he worked for about 6 months in 2019 cleaning school and party buses until the owner of the business passed away. He said that he had no other employment. He also said he had no assets or liabilities. He said that his girlfriend supports him because she works and receives child support. He also reported he uses marijuana daily.

Defendant has a long criminal history dating back to when he was 17 years old. He has multiple felony convictions for theft of a firearm, possession of a controlled substance, unlawful possession of a firearm, and multiple convictions on misdemeanor charges, including assault of a family member. His probation was revoked and he was sentenced to prison when he was 17.

Defendant's Evidence

Defendant called two witnesses. Miranda Williams and James Basset. Ms. Williams testified that she has been in a 3 ½ year relationship with Defendant, lives with him, had his baby, and he is helping her raise her two other children, ages 4 and 9. She said that she does not work. She is a student, seeking her degree in criminal justice. She testified that she relies on Defendant to support her and her children. Although she is supposed to receive child support from the father of her two older children, he has not paid. She said that Defendant is an excellent provider, making $450-500 per week at C&E Horse Accessory Shop. He has never been violent with her or the children and all of them consider him their father. She receives assistance in the form of SNAP, food stamps.

She testified that she stands by Defendant and would be willing to be responsible for him if her were released on bond. She further testified that she is his surety on his state court bond and has appeared at all of his court hearings, at least 5 or 6. She testified on cross that she was not aware he had a lunch box with drugs in it. She was not aware of his picture in the cooler with the gun.

Mr. Basset testified that he is the manager of C&E Horse Accessories Store. He further testified that Defendant has been an employee at the store since February 2019. Defendant works from 9 in the morning until 9 at night 5-7 days a week. He makes $500 per week. Defendant's duties included customer service, cleaning, stocking, and deliveries. Basset interviewed and hired Defendant. At the time, he was aware of Defendant's criminal history. Basset said that Defendant is a good worker, and he can count on Defendant. On cross, he testified that he was unaware Defendant was smoking marijuana on a daily basis. He never saw Defendant with a gun or drugs. He further testified that he knows Ms. Williams and Defendant's two brothers. Basset was unaware of Defendant's prior employment history.

CONCLUSION

Based on the allegations in the indictment, the evidence presented at the hearing, and the information in the Pretrial Services Agency report, the Court concludes as follows:

(1)     The indictment and the evidence presented establishes that the Defendant committed the offense with which he is charged, namely: felon in possession of a firearm, in violation of 18 U.S.C. §§  922 (g)(1) and 924 (a)(2).

(2)     The Government established by a preponderance of the evidence that the Defendant is a flight risk because the penalty range for the charge at issue is for jail time of up to 10 years, which impacts his risk of flight.  The PTS report, based on the interview with Defendant, establishes that he has a limited work history and no financial ties to the community. To the contrary, Defendant introduced evidence that he had a job with C&E Horse Accessories Shop. The testimony of both Ms. Williams and Mr. Basset on this point was not credible. Their testimony was directly contrary to the interview Defendant had with PTS where he said he was currently unemployed, worked part of the year doing construction until it got too cold and before that cleaned buses until the owner of the business died. Ms. Williams also

testified that she is a student and financially dependent on Defendant when he said that he was unemployed and dependent on her. He said she worked and received child support while she said she no longer worked and did not receive child support. Thus, the Court totally discounts the testimony Defendant elicited on his work history. However, the Defendant also introduced evidence that he has repeatedly appeared in court despite multiple felony charges pending against him. He also had a place to live with his girlfriend and children. Thus, the Court concludes that Defendant is not a serious flight risk.

(3)     However, the Government also established by clear and convincing evidence that the Defendant is dangerous because he has multiple prior felony convictions, including for theft of a firearm, possession of a controlled substance (twice), unlawful possession of a firearm, and multiple convictions on misdemeanor charges, including assault of a family member. His probation was revoked once but he was only 17 years old and it was his first arrest, so the Court does not give this much weight. In the instant charge, he was caught selling drugs inside of a cooler in a gas station where he did not work and had no legitimate reason to be there. He was in possession of a loaded stolen gun during those drug transactions. He was arrested on the federal charges when he was in his apartment, again in possession of a stolen gun. The gun was under his mattress in the home he shares with children who could have had access to the gun. The possession of the gun is likely a violation of his state bond. With his record for felony convictions, including for possession of a firearm, Defendant had to know that it was illegal for him to be in possession of a firearm and that to do so would violate his bond conditions. Thus, this evidence establishes that the Defendant cannot follow conditions of his release. Moreover, it overwhelmingly establishes that he is a danger to the community and his children. The Defendant failed to rebut this evidence.

(4)     Thus, the Court finds that the Defendant is a danger to the community such that it cannot safely release him on bond.

## Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant must be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date:         11/15/2019                                        *Dena Palermo*
                                                                United States Magistrate Judge